United States District Court
Southern District of Texas
**ENTERED**
November 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| MONICA A.,[1] | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:19-CV-2171 |
| ANDREW SAUL,[2] Commissioner of Social Security, | § § § | |
| *Defendant.* | § § § | |

## **MEMORANDUM AND ORDER**

Plaintiff Monica A. filed this suit seeking judicial review of the denial of disability and disability insurance benefits under Titles II and XVI of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed for cross-motions for summary judgment, ECF Nos. 17, 18. Based on the briefing and the record, the Court **DENIES** Plaintiff's motion, **GRANTS** Defendant's motion,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] Andrew Saul has been automatically substituted for the previously named defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

and **AFFIRMS** the Commissioner's final decision in the underlying administrative action.

## I.   BACKGROUND

Plaintiff is a 53-year-old woman, born on June 14, 1967, with a high school level education. R. 25, 296, 334.[3] She worked several jobs, mostly as a security guard. R. 61, 330, 331, 808. She has suffered from anxiety and post-traumatic stress disorder ("PTSD") since she January 15, 2012. R. 19, 344, 349–55. The Plaintiff additionally suffers from obesity and right degenerative joint disease after undergoing two operations in her right knee. R. 19, 333, 344, 1356.

On August 6, 2015 Plaintiff filed her application for disability insurance benefits and supplemental security income under both Titles II and XVI of the Social Security Act, claiming both mental and physical impairments. R.  296–305. The Plaintiff based her application on anxiety, depression, bipolar, arthritis in bilateral knees, back problems and pain, sciatica nerve pain, and hiatal hernias. R. 333–76.[4] On October 26, 2015 the Commissioner denied her claims. R. 100–22. Plaintiff

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 11.

[4] The relevant time period is January 1, 2014—Plaintiff's alleged onset date—through June 30, 2018—Plaintiff's last insured date. R. 341. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

requested reconsideration, and the Commissioner again denied her claims on February 1, 2016. R. 123–46.

Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 7, 2018. R. 55. An attorney represented Plaintiff at the hearing. *Id.* Plaintiff and a vocational expert testified at the hearing. R. 56, 62. On May 11, 2018, the ALJ issued a decision denying Plaintiff's request for benefits. R. 13.[5] Plaintiff requested that the Appeals Council review the ALJ's decision, and on October 26, 2018 the Appeals Council denied Plaintiff's request for review,

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at Step Five. At step one, the ALJ found that the Plaintiff engaged in substantial gainful activity during the following periods: the 3rd quarters of 2016 and 2017 (20 CFR 404.152(b), 404.1571, *et seq.*, 416.920(b) and 416.971 *et seq.*). R. 18–19. The ALJ also found at step one that there had been a continuous 12-month period during which the Plaintiff did not engage in substantial gainful activity during the relevant time period. R. 19. At step two the ALJ found that the Plaintiff had the following severe impairments: obesity, anxiety, PTSD and right knee degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)). R. 19. At step three the ALJ determined that the Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(D), 416.925 and 416.926). R. 19–21. The ALJ found that the Plaintiff has the Residual Functional Capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to sitting 6 hours in an 8-hour workday; lifting/carrying 20 pounds occasionally and 10 pounds frequently; occasionally climbing, but no climbing ladders, ropes, or scaffolds; occasional kneeling and crouching; no crawling; frequent balancing and stooping; must avoid extremes of cold, hazardous machinery, unprotected heights, and vibrations; detailed work but not production-rate pace work; occasional interaction with the public, coworkers, and supervisors. R. 21. At step four, the ALJ determined that the Plaintiff was capable of performing past relevant work as a security guard and item processor. R. 24. At step five, based on the testimony of the vocational expert and a review of the record, the ALJ concluded that considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. 25. Therefore, the ALJ concluded that a finding of "not disabled" was appropriate. R. 26.

affirming the ALJ's denial of benefits. R. 1; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

On June 12, 2019 Plaintiff filed this civil action. ECF No. 1. In this appeal Plaintiff challenges the ALJ's finding that Plaintiff's mental impairments do not meet one of the listings, and his RFC on the basis it is not supported by substantial evidence. Pl.'s MJS, EFC No. 17 at 5–11. Defendant opposes Plaintiff's motion, arguing that the ALJ's findings were proper and supported by substantial evidence. Def.'s MSJ, EFC No. 18 at 4–13.

## II.    STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*,

239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account

whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823.

## III.   ANALYSIS

The Plaintiff argues that the ALJ erred at Step three in finding that the Plaintiff's mental impairments did not satisfy the "paragraph B" criteria of the listing. ECF No. 17 at 5–6. In addition, the Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because he failed to properly consider her mental impairments. EFC No. 17 at 11. The Commissioner contends that the ALJ properly determined the RFC and his opinion is supported by substantial evidence. EFC No. 18 at 7–13.

### A.   At Step Three, The ALJ Properly Considered The "Paragraph B" Criteria To Find Plaintiff's Impairments Did Not Meet The Listing.

A claimant bears the burden of proving that he or she suffers from a disability. However, the mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a disability is defined as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000)).  "The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that

the claimant can perform other substantial work in the national economy." *Id.* Once the Commissioner makes that showing, the burden shifts back to the claimant to rebut the finding. *Id.* The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Thus, at step three, Plaintiff bears the burden to establish that her mental impairments satisfied the criteria necessary to meet one of the listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

Section 404.1520a requires an ALJ to evaluate the impact of a claimant's mental impairment on four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). At step three, the paragraph B criteria are used to determine whether a claimant meets a listing and can therefore be presumed disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A); *see Stovall v. Colvin*, No. 16-CV-17475, 2017 WL 8785560, at *6 (E.D. La. Sept. 22, 2017), *report and recommendation adopted*, 2018 WL 1726259 (Apr. 10, 2018).

To equal a listing, the Plaintiff must "provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). A claimant meets the paragraph B criteria of Listing 12.06 (anxiety and obsessive-compulsive disorders) and 12.15 (Trauma and

stressor-related disorders) by exhibiting extreme limitation[6] in one area or marked limitation[7] in two areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06, 12.15.

Here, the ALJ found that Plaintiff's anxiety and PTSD are severe but do not meet the requirements for Listings 12.06 or 12.15. R. 19–21. In evaluating the paragraph B criteria, the ALJ found Plaintiff has: (1) mild limitations in the domain of understanding, remembering, or applying information; (2) moderate limitations in the domain of interacting with others; (3) moderate limitations in the domain of concentrating, persisting, or maintaining pace; and (4) mild limitations in the domain of adapting or managing oneself. R. 20. Because Plaintiff did not have at least two marked limitations or one extreme limitation, the ALJ found she did not meet the requirements of paragraph B. R. 20–21.[8]

---

[6] An extreme limitation exists when a claimant is unable to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F). This "represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a

[7] A marked limitation exists when a claimant is seriously limited in functioning independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F).

[8] R. 20: At step three, the ALJ stated that:

"In understanding, remembering, or applying information, the claimant has a mild limitation. The claimant reported symptoms of anxiety, especially when she heard a male voice. (Exhibit 4F/7)."

"In interacting with others, the claimant has a moderate limitation. The claimant reported she did not like being in groups or crowded places and had decreased participation in social activities. (Exhibit 4F/7)."

### 1. *Plaintiff's argument that the ALJ failed to explain his reasons for the step three finding is without merit.*

The Plaintiff disagrees with the ALJ's finding that the Plaintiff has only a moderate limitation in the domain of interacting with others and a mild limitation in the domain of adapting and managing oneself. *Id*. at 7. In challenging these findings, Plaintiff mistakenly relies on *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) to suggest that the ALJ did not give an adequate explanation. In *Audler*, at step three, the ALJ "did not identify the listed impairment for which Audler's symptoms fail[ed] to qualify" or "provide any explanation as to how [the ALJ] reached the conclusion that Audler's symptoms [were] insufficiently sever to meet any listed impairment." *Id.* The Fifth Circuit remanded, finding that "[s]uch a bare conclusion is beyond meaningful judicial review." *Id.* (quotations omitted).

Unlike in *Audler*, here the ALJ did not give a barebones rational for his decision. Instead, he identified the specific listings considered, Listings 1.02 (major dysfunction of a joint), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (Trauma and stressor-related disorders). R. 20–21. Finding that Plaintiff's

---

"With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant reported flashbacks due to a history of sexual assault and domestic abuse. (Exhibit 4F/7)."

"As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant reported symptoms of distressing dreams and difficulty sleeping. (Exhibit 4F/7)."

impairments did not singularly or in combination meet or equal the criteria of the listings, the ALJ then explained how the Plaintiff compared in each domain, and discussed what factors were considered, citing to specific medical records in support. R. 20 (citing 4F, office treatment records from Family Counseling Connections dated 1/21/14 – 8/7/15). The ALJ also indicated that the specific parts of the record considered in making his "paragraph B" mental functional analysis were detailed in his RFC analysis. Thus, even if the findings were insufficiently explained, the Plaintiff must prove that she suffered prejudice. If the opinion is supported by substantial evidence, any error is harmless. *Belk v. Colvin*, 648 F.App'x., 452, 454–55 (5th Cir. 2016) (per curiam). Because the Court finds that the opinion is supported by substantial evidence, any error is harmless.

### 2. *The ALJ's Paragraph B findings are supported by substantial evidence.*

Alternatively, the Plaintiff argues that the ALJ's finding of the paragraph B criteria is not supported by substantial evidence. *Id*. at 7–11. Plaintiff's argument is without merit.

Plaintiff argues that the ALJ's conclusion in the domains of interacting with others and adapting and managing oneself results is erroneous because she repeatedly struggles with interpersonal relationships, both professionally and personally. ECF No. 17 at 7 (citing R. 717), 11.  While there is some support in the record for Plaintiff's position, there is also evidence that shows Plaintiff was coping.

For example, the record indicates that while the Plaintiff often struggled with her roommates and ex-partners, she similarly reported positive improvements in her symptoms by celebrating with her peers. R. 821, 838.[9]  While the Plaintiff was continuing to take her medicine, she reported to Highland Hospital that she was calm and continuing to go out more and more with her friends. R. 607.[10] In one of her last appointments at the Family Counseling Connections, on April 10, 2017 the Plaintiff reported that while she struggles with mood stability, she relies on her friends and brother for social support. R. 723. Conflicts in the evidence are for the Commissioner to resolve; in applying the substantial evidence standard, the court does not reweigh the evidence. *Perez*, 415 F3.d at 461. The ALJ's properly found Plaintiff suffers from moderate limitations in the domain of interacting with others.

Plaintiff also argues that she has at least marked, if not extreme, limitations in the domain of adapting and managing oneself. Plaintiff points to her high anxiety

---

[9] R. 838 (On May 30, 2012, the Plaintiff informed her therapist that she was using several appropriate coping skills to improve her anxiety including spending time with friends). R. 833 (On February 28, 2013 Plaintiff reported relying on her coworkers as she struggled with work following her sexual assault). R. 806 (On October 9, 2013 the Plaintiff reported coping well with her anxiety by the help of her close friends; therapist observed the Plaintiff as having a high degree of compliance with treatment). R. 769 (On October 12, 2015 the Plaintiff discussed with her therapist coping with her nervous breakdown through the use of community-based supporters for victims of sexual assault, continued socializing with friends, and utilizing peer support).

[10] R. 828 (On March 25, 2013, the Plaintiff admitted she was tired from her lack of sleep from partying that week). R. 836 (On April 1, 2013, the Plaintiff described partying that week with her friends leading to higher anxiety from lack of sleep). R. 821 (On June 17, 2013, the Plaintiff reported she liked to go out bar hopping with her friends as she had done so that week for her birthday). R. 607 (Plaintiff reported that she was calm and going out more and more with her friends).

since her January 2012 sexual assault as well as her trouble remembering parts of
the assault. ECF No. 17 at 7. However, the records at both Highland Hospital and
Family Counseling Connections indicate that the Plaintiff overall presented a
positive review in her ability to cope. R. 451, 454, 462, 567–69.[11]  In addition, the
Plaintiff presented positive coping mechanisms in managing her anxiety and PTSD.
R. 788–845.[12] Even when the Plaintiff reported occasional increases in anxiety, her
therapists' assessments continued to show positive reviews. R. 555–58, 726, 743–
44.[13] According to the Highland Hospital intake records, the Plaintiff overall

---

[11] R. 806 (On October 9, 2013, Plaintiff described as having a high degree of compliance with
treatment, and an ability to see different perspectives and focus on relevant topics). R. 795. (On
December 4, 2013, the Plaintiff had good motivation, presented a strong cognitive focus, and was
able to accurately identify and express feelings). R. 451 (On Octobers 2014, Plaintiff was fully
oriented, grooming was adequate, eye contact was good, memory was unimpaired, speech was
normal, psychomotor activity was fidgety, and attitude was cooperative). R. 567–69 (On May
2016, Plaintiff self-reported that she felt medication working well and decreased anxiety, she
denied suicidal ideation, and her mental status examination was normal.).

[12] R. 838 (On May 30, 2012, Plaintiff reported using several appropriate coping skills to express
her emotions and cope with her anxiety with pleasurable activities such as exercise, camping,
spending time with friends, and outdoor activities). R. 845. (On February 27, 2012, Plaintiff stated
that she returned to work because she wanted to "make herself resume some of what she used to
do and push through her fears."). R 841. (Plaintiff reported that her medication was helping her
reduce anxiety and her dependency on alcohol). R. 818–21 (On July 2, 2013, Plaintiff and her
therapist created a list of goals, including obtaining income and enrolling at the Garnet Career
Center). R. 795 (On December 4, 2013, Plaintiff discussed with her therapist wanting to go back
to school for welding and to learn a trade).  R. 788 (On November 6, 2014, Plaintiff reported as
being cooperative in an exercise making a "to do" list to help her decrease her symptoms of
anxiety).

[13] R. 726 (On August 12, 2015, despite Plaintiff self-reporting her anxiety had increased, Plaintiff
appeared well-oriented in all spheres, presented herself in a neat fashion, strong eye contact, and
memory seems intact and normal, and her concentration was characterized as within the normal
limits). R. 743–44 (On October 7, 2016, Plaintiff reported an increase in anxiety due to a conflict
with her landlord and a family member, but Plaintiff was described as able to concentrate and
focus well, with strong motivation, and moderate degree of compliance with treatment). R. 555–

continued to report positive improvements with the use of medicine. R. 552–601.[14] During this time, the Plaintiff was also able to work three to four days a week through her improvement with medication. R. 564–67.[15] Thus, the ALJ properly found Plaintiff suffers from only mild limitations in the domain of adapting and managing oneself.

Furthermore, the ALJ's determination is consistent with the disability determinations of both Dr. Saar and Dr. Todd, State Agency consultants. Their findings affirm the ALJ's finding that the Plaintiff's impairments did not meet or equal the Listings for paragraph B criteria. R. 104, 127. Both Dr. Saar and Dr. Todd noted that the paragraph "B" of the Listings—referring to the Plaintiff's mental impairments—were not satisfied. R. 105, 128.[16]

---

58 (On February 27, 2017, Plaintiff reported she experienced increased anxiety resulting from a verbal conflict with her neighbor, but Plaintiff indicated that her mood had been fair and her meds were helping her sleep; Plaintiff denied suicidal or violent intentions).

[14] R. 601 (Plaintiff reported in May 2015 that she had been stressed by her nephew, but the medication was helping, and she was doing ok). R. 582 (Plaintiff reported in October 2015 that her meds with helping with her anxiety) R. 579 (Plaintiff reported in November 2015 that her meds were helping her sleep and helping her mood). R. 573 (Plaintiff reported in February 2016 that her anxiety was improved and the medication—Alprazolam, Seroquel, Neurontin, Xanax, and Buspar—allowed her to take the edge off and sleep ok). R. 570 (Plaintiff reported in March 2016 that she had not been feeling anxious lately, her mood had been better, and her sleep has improved). R. 552 (Plaintiff reported in May 2017 that her meds had been working and her anxiety felt under control).

[15] R. 567 (Plaintiff reported in April 2016 that she had recently started a part time job as security at the dog track; Plaintiff claims her meds were working and helped her control her anxiety). R. 564 (Plaintiff reported in August 2016 that she was working part time at the casino and that her mood was ok, and the medication helped her to control her anxiety).

[16] Both medical experts opined that, based on the records, the Plaintiff demonstrated no restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in

Therefore, Plaintiff has failed to meet her burden that she met or equaled the requirements for any Listing.

### B. The ALJ's RFC Determination Is Supported by Substantial Evidence.

As a second point of error, the Plaintiff argues the ALJ did not properly consider her mental impairments in calculating the RFC. ECF No. 17 at 11–12. As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Furthermore, the ALJ may determine the credibility of medical experts as well as lay witnesses in weighing their opinions and testimony accordingly. *Id.* Subjective complaints must be corroborated by objective medical evidence. *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991).

The Commissioner argues that in making his RFC finding, the ALJ considered the objective medical evidence over the subjective symptoms of the Plaintiff alone. ECF No. 18 at 8. Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22. Instead, the ALJ based his decision in part on the GAF scores provided during the Plaintiff's

---

maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. R. 104, 127–28.

diagnosis of PTSD, the assessment of the State agency consultants, and the records

from the Family Counseling Connection and Highland Hospital.  R. 22–24.

The ALJ afforded some weight to the GAF scores. R. 24.[17] The ALJ noted

that the Plaintiff's GAF scores indicate that the Plaintiff has mild symptoms. R. 24.

The ALJ may rely on prior administrative medical findings so long as there is

supportability and consistency supporting the opinions. 20 C.F.R. § 404.1520(c)(3).

The ALJ stated that he gave partial weight to the assessment of the State Agency

consultants, limiting Plaintiff to light work, which the ALJ found was generally

consistent with the record as a whole. R. 24. He discounted those parts of the opinion

limiting Plaintiff to medium work, because he determined a greater limitation was

appropriate. R. 24. Both SAMs concluded that Plaintiff was not disabled. ECF No.

11-4 (Exhs. 1A & 3A).[18]

---

[17] "The Global Assessment of Functioning ('GAF') is a 100–point scale used to report the clinician's judgment of the individual's overall level of psychological, social and occupational functioning." *Locure v. Colvin*, No. 14-CV-1318, 2015 WL 1505903, at *8 n.5 (E.D. La. Apr. 1, 2015). The GAF scale is "a hypothetical continuum of mental health illness found in the Diagnostic and Statistical Manual of Mental Disorders." R. 24. Here, the ALJ only afforded some weight to the GAF scores, observing that the GAF scores are subjective, rather than objective, and are not entitled to great weight. R. 24.

[18] Here, Dr. Rabah Boukhemis conducted an RFC analysis of the Plaintiff on October 19, 2015. R. 107, 118. Dr. Boukhemis determined that the Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of 6 hours in an 8-hour work day; sit for a total of about 6 hours in an 8-hour workday; push and/or pull unlimited. R. 106n assessing the Plaintiff's RFC, Dr. Boukhemis rated the Plaintiff's individual postural limitations based upon the osteoarthrosis to her right knee: climbing ramps/stairs occasionally; climbing ladders/ropes/scaffolds never; balancing frequently; stopping frequently; kneeling occasionally; crouching occasionally; and crawling never. R. 106. Dr. Boukhemis cited the plaintiff as having environmental limitations, but no communicative, visual, or manipulative limitations. R. 107. Based upon the RFC, Dr. Boukhemis concluded that the Plaintiff was not

In evaluating the record, the ALJ considered the notes in the record of both Family Counseling Connection and Highland Hospital in making his RFC finding. R. 22–24. The ALJ noted that, in visits when the Plaintiff reported an increase in anxiety, the record indicates that a mental status examination was normal and characterized the Plaintiff with an overall positive review. R. 23–24 (citing R. 451, 454).[19] Similarly, the ALJ noted how the records from Family Counseling Connections indicated the Plaintiff was able to maintain employment despite complaints of trauma related symptoms—such as nightmares, difficulty sleeping, and flashbacks. R. 23 (citing R. 723–24).[20]

Additionally, the records from Highland Hospital indicate that the Plaintiff was able to maintain employment while treating her anxiety with the recommended

---

disabled and could adjust to other work. R. 109. In the reconsideration analysis, Dr. Caroline Williams, MD determined an identical RFC as Dr. Boukhemis on January 27, 2016. R. 130.

[19] The ALJ noted that when the Plaintiff reported high anxiety in May 2014, the records from Family Counseling Connection would observe the Plaintiff as having a normal mental status examination; fully oriented; grooming was adequate; eye contact was good; memory was unimpaired; speech was normal; psychomotor activity was fidgety; thought content was preoccupied by external stressors; attitude was cooperative; and Plaintiff was able to maintain focus and consideration. R. 23. Similarly, on January 2017 the Plaintiff claimed she was not doing well with mood swings, anxiousness, and difficulty sleeping but the record indicates her presentation was clean; eye contact was direct; cognitive function was alert; thought content was appropriate; affect was anxious; gait was normal. R. 23. Again, on August 2017, the Plaintiff was reported as having a normal mental status examination. R. 23.

[20] The ALJ noted that the Plaintiff complained of nightmares relating to her assault in April, 2017 while she reported she was working three to four days as a security guard. R. 23. Additionally, the record indicates that following the Plaintiff's initial treatment at Family Counseling Connections on February 27, 2012, the Plaintiff stated she returned to work because she believed it was important to return to normal life. R. 845.

medication. R. 552, 555, 567, 570, 573.[21] A medical condition that can reasonably be remedied by medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Despite the self-reported decrease in anxiety, the Plaintiff chose to discontinue taking her medication to "attempt reducing her anxiety on her own." R. 810. The Fifth Circuit has held that a Plaintiff's refusal to follow doctor's recommended treatment proven to improve symptoms renders the ailments non-disabling. *Herbert v. Barnhart*, 197 F. App'x. 320, 323 (5th Cir. 2006) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (per curiam) (holding that a mental impairment that can be remedied by medication will not be considered a disability)).

In addition, the Plaintiff failed to show up for her psychotherapy appointments and was subsequently discharged from services at Family Counseling Connections on six separate occasions.[22] Therefore, even if the Plaintiff was found to be disabled, she would still not be entitled to recover benefits inasmuch as she failed to follow the treatment regimen prescribed by her physicians. *See* 20 C.F.R. § 404.5130(a),

---

[21] Since beginning her medication—Xanax, Ambien, Zoloft, and Buspar—the Plaintiff reported that her anxiety was "under control." R. 810–20. The Plaintiff reported to her therapist at Family Counseling Connections on November 20, 2013 that her anxiety symptoms had decreased and been manageable since returning to medication. R. 797. Additionally, in her regular visits at Highland Hospital for her medication maintenance, the Plaintiff reported that the medication would "take the edge off" and allow her to "sleep ok." R. 573.

[22] The Plaintiff failed to show for her individual therapy sessions and was consequentially discharged from services on October 18, 2012; January 12, 2015; August 7, 2015; August 12, 2016; March 27, 2017; and September 21, 2017. R. 23, 718, 729, 750, 786, 787, 837.

(b) ("If you do not follow prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."); *see also Johnson v. Sullivan*, 894 F.2d 683, 686 n. 4 (5th Cir. 1990).

Finally, the Plaintiff argues that the ALJ appears to rely, at least in part, on the misconception that Plaintiff has never been psychiatrically hospitalized.  ECF No. 17 at 12 (citing R. 22). Even though the ALJ misstated the record when he stated that "there was no evidence of any psychiatric hospitalizations," R. 22, the error was harmless.[23] *Morris v. Bowen*, 864 F. 2d 333, 334 (5th Cir. 1988) (finding harmless error when substantial evidence in the record supports the ALJ's decision).

There was substantial evidence to support the ALJ's RFC determination that Plaintiff is not disabled and is capable of performing a modified range of light work.

## IV.    CONCLUSION

The Court **GRANTS** Commissioner's motion for summary judgment, ECF No. 18, and **DENIES** the Plaintiff's motion for summary judgment, ECF No. 17. The Commissioner's determination that the Plaintiff is not disabled is **AFFIRMED**. Plaintiffs claims are **DISMISSED WITH PREJUDICE.**

---

[23] On April 8, 2013 the Plaintiff admitted herself voluntarily to Highland Hospital for suicidal ideation. R. 418. She was placed on suicide precautions. R. 418. Plaintiff was treated and prescribed medicines for her anxiety and released with orders to continue attending individual and group therapy sessions at Family Counseling Connections. R. 418–19.

Signed on November 30, 2020, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**